UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR CHRISTIANSEN AND OLGA CHRISTIANSEN,<br><br>    Plaintiffs<br><br>  v.<br><br>WELLS FARGO BANK, et al.,<br><br>    Defendants.<br>_____/ | No. C 12-02526 DMR<br><br>**ORDER GRANTING MOTION TO DISMISS, GRANTING MOTION TO STRIKE, AND DENYING MOTION TO EXPUNGE NOTICE OF PENDING ACTION** |

This matter comes before the court on Defendant Wells Fargo Bank's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), Motion to Strike, and Motion to Expunge Notice of Pending Action. The court conducted a hearing on September 27, 2012, during which the parties were given an opportunity to present oral argument. For the reasons below, Defendant's Motion to Dismiss and Motion to Strike are granted and Plaintiffs' FAC is dismissed with leave to amend. Defendant's Motion to Expunge is denied.

**I. BACKGROUND**

On January 1, 2005, Plaintiffs Victor and Olga Christiansen recorded a deed of trust on real property located at 712 Raineer Court, San Leandro, California ("the property"), securing a note in favor of World Savings Bank, FSB ("World Savings Bank") for $533,680. (FAC ¶¶ 3, 10; Defs.'

Req. for Judicial Notice in Supp. of Mot. to Dismiss[1] ("RJN"), Ex. B.) Golden West Savings Association Service Co. ("Golden West") was named as the trustee on the deed of trust. (FAC ¶ 10; RJN Ex. B.) In 2008, World Savings Bank changed its name to Wachovia Mortgage, FSB. On November 1, 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Bank Southwest, N.A. and then merged into and became a division of Wells Fargo Bank, N.A. ("Wells Fargo"). (RJN Exs. C-F.[2])

On January 1, 2011, NDeX West, LLC ("NDeX"), acting as the trustee, executed a Notice of Default alleging that Plaintiffs had defaulted on the loan and that the amount due on the note was $7,402.83. (FAC ¶ 12; RJN Ex. H.) An individual acting on behalf of LSI Title Company signed the Notice of Default, which in turn acted as an agent of NDeX. (RJN Ex. H.) On February 22, 2011, NDeX recorded a substitution of trustee whereby it purportedly replaced Golden West as trustee under the deed of trust. (FAC ¶ 13; RJN Ex. I.) The substitution of trustee was signed by Ric Juarez of NDeX as "Attorney in Fact" for Wells Fargo. (RJN Ex. I.) Plaintiffs allege that Wells Fargo has admitted in state court that Mr. Juarez did not have a written power of attorney from Wells Fargo. (FAC ¶¶ 13, 20.)

On November 16, 2011, NDeX executed a Notice of Trustee's Sale setting the trustee's sale for December 6, 2011. (FAC ¶ 14; RJN Ex. J.) The sale apparently was postponed and was finally

---

[1] The court grants Defendant Wells Fargo's request for judicial notice of Exhibits B, H, I, J, and K, the deed of trust, notice of default, substitution of trustee, notice of trustee's sale, and trustee's deed upon sale recorded in connection with Plaintiffs' loan. They are true and correct copies of official public records of the Alameda County Recorder's Office, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Plaintiffs objected to the request for judicial notice, arguing that the court may not take judicial notice of the disputed factual matters stated therein. The court notes that it has relied on the documents for their existence, rather than the truth of the matters stated therein.

[2] The court also grants Wells Fargo's request for judicial notice of Exhibits C through F, which establish the history of Wachovia Mortgage, FSB. The court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence. *See Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010) ("[J]udicially noticeable documents reveal that the original lender, World Savings Bank, FSB, simply changed its name to Wachovia Mortgage, FSB, and is now a division of Wells Fargo Bank, N.A.") Plaintiffs objected to the court taking judicial notice of these documents, but has not disputed the accuracy of the statements therein or otherwise demonstrated why the court should deny the request. Accordingly, Plaintiffs' objections are overruled. Wells Fargo's request that the court take judicial notice of any other documents is hereby denied.

set for March 23, 2012. (FAC ¶ 15.) At the trustee's sale, the property was sold to Wells Fargo. On April 2, 2012, a trustee's deed upon sale evidencing the sale to Wells Fargo was recorded. (FAC ¶ 15; RJN Ex. K.)

On December 1, 2011, Plaintiffs filed their complaint against Wells Fargo and NDeX in Alameda County Superior Court alleging three causes of action: 1) quiet title; 2) slander of title; and 3) injunctive relief. Wells Fargo removed the case to federal court on May 16, 2012. On May 23, 2012, Wells Fargo filed a motion to dismiss Plaintiffs' complaint, motion to strike, and motion to expunge notice of pending action. [Docket Nos. 5, 7, and 8.] On June 15, 2012, Plaintiffs filed their first amended complaint, alleging causes of action for 1) slander of title; 2) wrongful foreclosure; and 3) violation of California Business and Professions Code section 17200. [Docket No. 17.] Wells Fargo's present motions to dismiss Plaintiffs' FAC, to strike, and to expunge notice of pending action followed. [Docket Nos. 19, 20, and 21.]

## II.  MOTION TO DISMISS

### A.  Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th

1  Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose
2  authenticity no party questions, but which are not physically attached to the pleading" without
3  converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v.*
4  *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa*
5  *Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict
6  facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385,
7  1388 (9th Cir. 1987).

### B.   Analysis

#### 1.   Slander of Title Claim

10  "The recordation of an instrument facially valid but without underlying merit will give rise to
11  an action for slander of title." *Stamas v. Cnty. of Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal.
12  2011) (citing *Seeley v. Seymour*, 190 Cal. App. 3d 844, 857 (1987)). In California, the plaintiff must
13  establish: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4)
14  which causes direct and immediate pecuniary loss." *Lykkeberg v. Bank of Am., N.A.*, No. C 12-
15  00772-JW, 2012 WL 1099773, at *6 (N.D. Cal. Apr. 2, 2012) (citing *Manhattan Loft, LLC v.*
16  *Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009)).

17  Plaintiffs sufficiently plead the publication element, because the foreclosure documents in
18  question are matters of public record. (FAC ¶¶ 10, 12-15; RJN, Exs. B, H-K.) As to falsity,
19  Plaintiffs alleges that the recorded documents, including the substitution of trustee, notice of
20  trustee's sale, and trustee's deed upon sale are false and invalid. (FAC ¶¶ 20-23.) Plaintiffs' falsity
21  allegation relies on two theories, one of which fails as a matter of law. The court will address each
22  theory in turn.

#### a.   Securitization

24  Plaintiffs first allege that Wells Fargo was not the true beneficiary under the deed of trust and
25  thus had no authority to make a valid substitution of trustee. (FAC ¶ 20.) Specifically, Plaintiffs
26  allege that in 2005, World Savings Bank securitized and sold Plaintiffs' deed of trust to a Real
27  Estate Mortgage Investment Conduit trust, and after this sale, World Savings Bank only retained the
28  servicing rights to the loan. (FAC ¶ 11.) Accordingly, Plaintiffs allege, the beneficial interest in the

4

deed of trust was not part of World Savings Bank's assets when they passed to Wachovia Mortgage F.S.B., and so when Wells Fargo became Wachovia Mortgage F.S.B.'s successor in interest, "it could not have received the beneficial interest in Plaintiffs' deed of trust." (FAC ¶¶ 19.) Because Wells Fargo was not the true successor to the beneficial interest in the deed of trust, Plaintiffs allege that the foreclosure process was tainted, and that the foreclosure documents, including the substitution of trustee, notice of trustee's sale, and trustee's deed upon sale are false and invalid. (FAC ¶¶ 20-23.)

This theory fails as a matter of law. As recognized by numerous courts, a defendant bank does not invalidate its ability to enforce the terms of a deed of trust if the loan is assigned to a trust pool or Real Estate Mortgage Investment Conduit ("REMIC").[3] *See, e.g., Wadhwa v. Aurora Loan Servs., LLC*, No. S-11-1784 KJM KJN, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (not reported in F. Supp. 2d) (rejecting argument that "assignment of the note to a [REMIC] renders any interest in the property other than plaintiffs' somehow invalid"); *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (argument that "all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool" is "both unsupported and incorrect"); *Benham v. Aurora Loan Servs.*, No. C-09-2059 SC, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (not reported in F. Supp. 2d) ("Other courts in this district have summarily rejected the argument that [lenders] lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool."). The alleged "securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust." *Reyes v. GMAC Mortgage LLC*, No. 2:11-CV-0100 JCM (RJJ), 2011 WL 1322775, at *2 (D. Nev. Apr. 5, 2011); *see also Nguyen v. Bank of Am. Nat'l Ass'n*, No. 11-CV-03318-LHK, 2011 WL 5574917, at *9 (N.D. Cal. Nov. 15, 2011) (securitization of mortgage loan does not provide mortgagor with cause of action). "Securitization merely creates a separate contract, distinct from [p]laintiffs['] debt obligations under the note, and does not change the relationship of the parties in any way." *Reyes*, 2011 WL 1322775, at *3 (citation omitted). Therefore, Plaintiffs cannot

---

[3] Indeed, Plaintiffs have not cited any case that reached a different conclusion.

5

maintain claims based upon the theory that the alleged securitization of Plaintiffs' loan divested Wells Fargo of its interest in the note, and thus its standing to initiate foreclosure proceedings.

Further, Plaintiffs' claims premised on a securitization theory must also be dismissed because they are preempted by federal law. Pursuant to the Supremacy Clause, federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Bank of Am. v. City and Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002) (citation omitted). Congress has created "an extensive federal statutory and regulatory scheme" in the field of banking. *Id.* As part of this scheme, Congress provided the Office of Thrift Supervision ("OTS") with broad authority under the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, to issue regulations governing federally chartered savings associations. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-05 (9th Cir. 2008). Wells Fargo's predecessor, World Savings Bank, was a federally chartered savings bank regulated by the OTS under HOLA at the time Plaintiffs entered into their loan.[4] (*See* RJN Ex. C.) The OTS is expressly authorized "to promulgate regulations that preempt state laws affecting the operations of federal savings associations." 12 C.F.R. § 560.2(a).

A HOLA preemption analysis first requires a court to determine whether the law at issue is identified in 12 C.F.R. § 560.2(b), which provides a nonexclusive list of the types of state laws preempted by HOLA. *See Silvas*, 514 F.3d at 1005. If the state law at issue falls into one of the enumerated categories, then it is preempted. *Id.* If it does not fall into one of the enumerated categories but affects lending, a presumption of preemption arises that is reversed only "if the law can clearly be shown to fit within the confines of paragraph (c) [of section 560.2]." *Id.* Section 560.2(c) excepts from preemption "[s]tate laws . . . that . . . only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)." 12 C.F.R. § 560.2(c).

---

[4] HOLA applies even though successor Wells Fargo is not chartered as a federal savings bank. *See Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2011 WL 445183, at *4 (N.D. Cal. Feb. 2, 2011) (not reported in F. Supp. 2d) ("'Where a national association, such as Defendant, acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA.'") (quoting *Guerrero v. Wells Fargo Bank, N.A.*, No. 10-5095-VBF (AJWx), 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010)).

1 Of the specific types of state laws that are preempted under section 560.2(b), Wells Fargo
2 argues that, *inter alia*, section 560.2(b)(10) is applicable to this case. (Def.'s Mot. 7.) Section
3 560.2(b)(10) states that "the types of state laws preempted by [§ 560.2(a) ] of this section include,
4 without limitation, state laws purporting to impose requirements regarding ... [p]rocessing,
5 origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R.
6 § 560.2(b)(10). Numerous courts have held that this section preempts challenges to foreclosures
7 based upon securitization allegations. In *Hague v. Wells Fargo Bank, N.A.*, No. C 11-2366-TEH,
8 2011 WL 6055759, at *5 (N.D. Cal. Dec. 6, 2011), the court explained that "[t]he fact that the
9 [plaintiffs] challenge the securitization of [their] mortgage would seem to fall squarely within §
10 560.2(b)(10)'s specific preemption of state claims that deal with 'investment' in mortgages."[5] The
11 court thus held that a declaratory relief claim based upon a securitization theory was preempted by
12 HOLA. *See also Unlu v. Wells Fargo Bank N.A.*, No. 10-5422-EJD, 2011 WL 6141036, at *7 (N.D.
13 Cal. Dec. 9, 2011) (denying leave to amend to challenge securitization of mortgage on the grounds
14 that such a claim would be preempted by HOLA); *Thomas v. Deutsche Bank Nat'l Trust*, No. 12-
15 0472 CRB, 2012 WL 1600434, at *3 (N.D. Cal. May 7, 2012) (holding HOLA preempted all of
16 plaintiff's state law claims based upon allegation that securitization divested the lender of interest in
17 the note).

18 While not addressing any cases in which courts have held HOLA preempts similar claims,
19 Plaintiffs argue that 12 C.F.R. § 560.2(c)(2) salvages their causes of action. (Pls.' Opp'n 7-8.)
20 Section 560.2(c)(2) lists the types of state laws which "are not preempted to the extent that they only
21 incidentally affect the lending operations of Federal savings associations or are otherwise consistent
22 with the purposes of paragraph (a) of this section," including "[r]eal property law." 12 C.F.R. §
23 560.2(c)(2). Plaintiffs argue that the process of foreclosure is a matter of state real property law, and
24 cite a California case, *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), that they claim
25 supports their position. In *Mabry*, the court held that HOLA does not preempt California Civil Code

---

[5] The court also noted that "REMIC securitization . . . does not actually remove the property interest of the party assigning the note – the purchase of the note by entities which sell securities (i.e. securitization of the note) does not alter the Note." *Hague*, 2011 WL 6055759, at *5 (citing *Wadhwa*, 2011 WL 2681483, at *4-5.).

section 2923.5, which governs borrower contact requirements prior to the issuance of a notice of default. *Id*. at 230-32. However, Plaintiffs have not pled a violation of section 2923.5, so that case is inapposite. Moreover, a number of federal courts have disagreed with *Mabry*'s holding that HOLA does not preempt section 2923.5. *See, e.g., Nguyen*, 749 F. Supp. 2d at 1033 (disagreeing with *Mabry* and holding section 2923.5 preempted by HOLA); *Giordano v. Wachovia Mortgage FSB*, No. 10-4661-JF, 2010 WL 5148428, at *4-5 (N.D. Cal. Dec. 14, 2010) (not reported in F. Supp. 2d) (same). Therefore, to the extent Plaintiffs' claims are based upon a securitization theory, they must be dismissed with prejudice as they are preempted by HOLA. *See Thomas*, 2012 WL 1600434, at *3 (dismissing with prejudice state claims based upon alleged securitization, including, *inter alia*, slander of title and lack of standing to foreclose).

### b. False Substitution of Trustee

Plaintiffs' second theory is that the substitution of trustee purporting to substitute NDeX for Golden West as trustee is false because it was signed by an individual who did not have the authority to sign the document on behalf of Wells Fargo. As NDeX was not validly substituted as trustee, each subsequent document executed by NDeX as the purported trustee is false and invalid. (FAC ¶¶ 20-22.)

The substitution of trustee which was recorded on February 22, 2011 was signed by Ric Juarez of NDeX as "Attorney in Fact" for Wells Fargo. (RJN Ex. I.) Plaintiffs allege that Wells Fargo has admitted in state court that Mr. Juarez did not have a written power of attorney from Wells Fargo. (FAC ¶¶ 13, 20.) Plaintiffs do not provide any further details; for example, Plaintiffs do not state when Wells Fargo made its "admission," what exactly that admission was, and how and where it was made. Thus, it is presently unclear whether Mr. Juarez had a viable power of attorney at the time he signed the substitution of trustee document *in this case*. Although Plaintiffs' theory of falsity with respect to these allegations was not clearly pled in the FAC, Plaintiffs argued at the hearing on this motion that because Mr. Juarez was not Wells Fargo's "Attorney in Fact" and did not have authority to effect the substitution of NDeX for Golden West as trustee, the substitution of trustee was false. Plaintiffs are granted leave to amend to clearly plead this element of the slander of title claim.

Turning to the remaining elements of the slander of title claim, Plaintiffs fail to adequately plead that the publication is without privilege or justification. California Civil Code section 47(c)(1) states: "[a] privileged publication or broadcast is one made: (c) [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested." Cal. Civ. Code § 47(c)(1). Nonjudicial foreclosure documents are subject to this privilege. *See* Cal. Civ. Code § 2924(d); *Dubose v. Suntrust Mortg., Inc.*, No. 5:11-CV-03264 EJD, 2012 WL 1376983, at *3 (N.D. Cal. Apr. 19, 2012) (dismissing slander of title claim because notice of default, notice of trustee sale, and substitution of trustee are subject to privilege); *Lykkeberg*, 2012 WL 1099773, at *6 (dismissing slander of title claim because transfer of deed is subject to privilege); *Ramirez v. Right-Away Mortg. Inc.*, No. C 11-01839-WHA, 2011 WL 3515931, at *3 (N.D. Cal. Aug. 11, 2011) (not reported in F. Supp. 2d) (dismissing slander of title claim because notice of default is subject to privilege).

An exemption to the section 47 privilege arises upon an allegation of malice. *Permito v. Wells Fargo Bank, N.A.*, No. C-12-00545-YGR, 2012 WL 1380322, at *8 (N.D. Cal. Apr. 20, 2012) (citing *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008)) ("Absent factual allegations of malice, a trustee's performance of the statutory procedures in a nonjudicial foreclosure is subject to the qualified, common-interest privilege of California Civil Code § 47(c)(1).")). Malice requires "that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at 336 (quoting *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413 (1976)) (emphasis in original) (quotation marks omitted). Here, Plaintiffs allege that Wells Fargo acted in malice and reckless disregard for the truth when it caused NDeX West to execute and record a substitution of trustee when it was not the true beneficiary (FAC ¶¶ 20, 22), when NDeX West recorded a notice of trustee's sale when it was not the valid trustee (FAC ¶ 21), and when Wells Fargo recorded a trustee's deed upon sale when NDeX West was not the valid trustee and Wells Fargo was not the beneficiary (FAC ¶ 22). However, these allegations are conclusory and are inadequate to plead malice.

Plaintiff also fails to plead sufficiently that Defendants caused direct and immediate pecuniary harm. Plaintiffs do not allege specific facts to support the bare assertion that the

property's vendibility was impaired (FAC ¶ 23), and allege that attorneys' fees and costs incurred in the current action constitute pecuniary harm (FAC ¶ 24). However, "in an action for slander of title fees incurred to quiet title are recoverable and fees incurred prosecuting the slander of title are not." *Ryan v. Editions Ltd. W., Inc.*, No. C-06-4812-PVT, 2007 WL 4577867, at *13 n.13 (N.D. Cal. Dec. 27, 2007) (not reported in F. Supp. 2d). Because the alleged monetary loss is limited to attorneys' fees and costs for pursuing the slander of title action, the allegations fail to establish pecuniary harm as a matter of law.

Therefore, the court dismisses Plaintiffs' slander of title claim with leave to amend.

### 2. Wrongful Foreclosure Claim

In *Lona v. Citibank, N.A.*, the court set forth the elements of an equitable cause of action for wrongful foreclosure:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

202 Cal. App. 4th 89, 104 (2011).

#### a. Illegal Sale

Plaintiffs allege two grounds for demonstrating an illegal, fraudulent, or willfully oppressive sale. First, Plaintiffs allege that the foreclosure was oppressive and wrongful because Wells Fargo was not the true beneficiary at the time of the trustee's sale due to the securitization of the loan. (FAC ¶¶ 28, 29.) As set forth above, this theory fails as a matter of law. Second, Plaintiffs allege that the foreclosure was oppressive and wrongful because NDeX was not the true trustee, rendering both the sale and the trustee's deed upon sale "void." (FAC ¶¶ 30, 31.) As clarified by Plaintiffs at the hearing, this assertion is based upon their allegations that Ric Juarez was not Wells Fargo's "Attorney in Fact" and therefore did not have the authority to effect the substitution of NDeX for Golden West as trustee. As with Plaintiffs' slander of title claim, this assertion was not clearly pled in the FAC.. Plaintiffs are granted leave to amend to clearly plead this element of their wrongful foreclosure clam. *See Tang v. Bank of America, N.A.*, No. SACV 11-2048 DOC (DTBx), 2012 WL

10

960373, at *10 (C.D. Cal. March 19, 2012) (granting leave to amend claim of wrongful foreclosure where plaintiffs alleged the person who signed substitution of trustee lacked an agency relationship with defendant bank).

### b. Prejudice or Harm

Plaintiffs have not adequately pled prejudice or harm. Plaintiffs allege that they were prejudiced because "they lost their home, their equity in the subject property, and were forced to engage the assistance of counsel to defend" the wrongful foreclosure. (FAC ¶ 32.) However, prejudice or harm is not established unless Plaintiffs demonstrate "that the foreclosure would have been averted but for [the] alleged deficiencies." *Reynoso v. Paul Fin., LLC*, No. 09-3225 SC, 2009 WL 3833298, at *4 (N.D. Cal. Nov. 16, 2009) (not reported in F. Supp. 2d); *see also Ghuman v. Wells Fargo Bank, N.A.*, No. 1:12-CV-00902-AWI-BAM, 2012 WL 2263276, at *5 (E.D. Cal. Jun. 15, 2012) ("Plaintiffs would be hard pressed to show any conceivable prejudice, given Plaintiffs have offered no facts to suggest the substitution of NDEx (or the allegedly improper recording thereof) adversely affected their ability to pay their debt or cure their default."). Plaintiffs do not allege that foreclosure would not have occurred but for the supposed invalid substitution of trustee.

### c. Tender or Excuse From Tender

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a *voidable* sale under a deed of trust." *Karlsen v. American Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 121 (1971) (emphasis added); *see also Arnolds Mgmt Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984) ("[A]n action to set aside a trustee's sale for irregularities in the sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). A plaintiff must allege facts demonstrating both a willingness and ability to pay the amount of indebtedness. *In re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009).

"The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *FPCI RE-HAB 01 v. E & G Invs., Ltd.*, 207 Cal. App. 3d 1018, 1021-22 (1989); *see also Karlsen*, 15 Cal. App. 3d at 118 (where a borrower is in default on a loan and has shown no ability to

11

1  "relieve herself from such defaults . . . *[e]quity will not interpose its remedial power in the*
2  *accomplishment of what seemingly would be nothing but an idly and expensively futile act . . .*")
3  (emphasis in original).  However, courts do not require tender when a plaintiff is not relying on
4  equity to set aside a trustee sale and, instead, alleges that the sale was void, rather than voidable.  *See,*
5  *e.g., Dimock v. Emerald Properties LLC*, 81 Cal. App. 4th 868, 878 (2000) (holding that where the
6  incorrect trustee had foreclosed on a property and conveyed it to a third party, the conveyed deed was
7  not merely voidable, but void); *Ottolini v. Bank of America*, No. C-11-0477 EMC, 2011 WL
8  3652501, at *4 (N.D. Cal. Aug. 19, 2011) (not reported in F. Supp. 2d) (declining to dismiss
9  complaint on basis of tender with a similar deed of trust where "the Court cannot conclude, at least at
10 this juncture, that the sale is merely voidable wherein tender would be required").  Here, Plaintiffs
11 allege that the substitution of NDeX as trustee was invalid, and thus NDeX did not have the power to
12 initiate foreclosure proceedings.  As this is a motion to dismiss, the court cannot state as a matter of
13 law that the allegations about the substitution of NDeX do not support an inference that the trustee's
14 sale was void, rather than voidable.  Accordingly, the court declines to apply the tender rule at this
15 early pleading stage.  See *Tamburri v. Suntrust Mortgage*, No. 11-2899-EMC, 2011 WL 6294472, at
16 *3-5 (Dec. 15, 2011) (discussing exceptions and qualifications counseling against blanket application
17 of the tender rule at the pleading stage); *Sohal v. Federal Home Loan Mortgage Corp.*, No. C 11-
18 01941-JSW, 2011 WL 3842195, at *4-5 (Aug. 30, 2011) (not reported in F. Supp. 2d) (concluding
19 tender rule did not apply where plaintiffs alleged foreclosure was void, rather than voidable, on the
20 grounds that foreclosing parties did not have authority to initiate foreclosure).
21          Plaintiffs' wrongful foreclosure claim is dismissed with leave to amend.
22              **3.      Unfair Business Practices**
23          California's Unfair Business Practices Act prohibits unfair competition, which is defined as,
24 inter alia, "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §
25 17200.  Plaintiffs acknowledge that their section 17200 claim "is a derivative cause of action and
26 [their] ability to pursue this cause of action depends on the success or failure of their substantive
27 causes of action."  (FAC ¶ 36.)  Plaintiffs' section 17200 claim is based upon Wells Fargo's
28 recording of a substitution of trustee which was "invalid because Defendant Wells Fargo was not the

12

beneficiary and therefore could not execute a substitution of Trustee in favor of" NDeX. (FAC ¶ 37.) Thus, it appears that this claim is solely based upon Plaintiffs' securitization theory, which fails as a matter of law. Accordingly, on this theory, Plaintiffs have failed to allege facts sufficient to demonstrate an unlawful and/or unfair business practice. However, Plaintiffs may amend this claim based upon their theory that the substitution of trustee was invalid because Ric Juarez lacked power of attorney for Wells Fargo.

Wells Fargo also challenges the section 17200 claim on the basis that Plaintiffs lack standing to bring the claim, arguing that the "pleadings are devoid of facts showing Wells Fargo caused actual loss to [P]laintiffs, which is essential to bring a UCL claim for relief." (Def's Mot. 12, citing *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 859 (holding a UCL plaintiff must plead injury-in-fact and causation in order to state a claim).) However, the argument that Plaintiffs have not established a causal connection between any alleged unlawful activity by Wells Fargo and Plaintiffs' harm presupposes that Wells Fargo will prevail on Plaintiffs' substantive claims, which is inappropriate for purposes of a Rule 12(b)(6) motion. *See Tamburri*, 2011 WL 6294472, at *18.

Plaintiffs' section 17200 claim is dismissed with leave to amend.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires." At the hearing on this motion, in response to the court's specific inquiry, Plaintiffs' counsel could not identify any additional facts or legal theories to support Plaintiffs' claims. Accordingly, Plaintiffs are granted leave to file a second amended complaint, but only to address the specific pleading deficiencies identified above. Plaintiffs may not add new legal theories or claims.

### III. MOTION TO STRIKE

Wells Fargo moves to strike portions of Plaintiffs' section 17200 claim requesting money damages on the grounds that the UCL does not provide for damages. Under Federal Rule of Civil Procedure 12(f), the court may strike "requested relief [that] is not recoverable as a matter of law." *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005); *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992) (striking UCL restitution claims as irrelevant because

plaintiffs failed to adequately distinguish such claims from damages claims, which are not recoverable under UCL). Damages are not available under the UCL. *Californians For Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232 (2006) ("[N]o one may recover damages under the UCL."). Accordingly, Wells Fargo's motion to strike is granted. All references to damages in Plaintiffs' UCL cause of action are stricken.

## IV. MOTION TO EXPUNGE

Finally, Wells Fargo moves to expunge Plaintiffs' Notice of Pendency of Action (lis pendens) on the San Leandro property. Federal courts look to state law in matters concerning lis pendens. *See* 28 U.S.C. § 1964; *see also Carnero v. Federal Home Loan Mortgage Corp.*, C 11-1029-WHA, 2012 WL 195408, at *2 (N.D. Cal. Jan. 23, 2012). Under California Code of Civil Procedure section 405.20, "[a] party to an action who asserts a real property claim may record a notice of pendency of action, [a lis pendens], in which that real property claim is alleged." The effect of a lis pendens "is that anyone acquiring an interest in the property after the action was filed will be bound by the judgment." *BGJ Assocs., LLC v. Superior Court*, 75 Cal. App. 4th 952, 966 (1999). "Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged." *Id.* at 967.

A court must expunge a notice of pendency of action if it determines either that the pleading on which the notice is based does not contain a real property claim, or that the claimant has not established "by a preponderance of the evidence the probable validity of the real property claim." Cal. Code Civ. Proc. §§ 405.31, 405.32. A real property claim is defined as a cause of action in a pleading "which would, if meritorious, affect . . . title to, or the right to possession of, specific real property." Cal. Code Civ. Proc. § 405.4. Probable validity "means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." Cal. Code Civ. Proc. § 405.3.

Plaintiffs' claim for wrongful foreclosure is a claim which would affect the title to, or right to possession of, the property at issue, thus it appears to be a real property claim. As set forth above, this court dismisses Plaintiffs' FAC with leave to amend. Given that Plaintiffs have been granted leave to file a second amended complaint, it would be premature to assess the probable

14

validity of their wrongful foreclosure claim or of any of their claims. Wells Fargo's motion to expunge the lis pendens is therefore denied as premature. Wells Fargo's request for attorneys' fees is also denied.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and Motion to Strike are granted and Plaintiffs' FAC is dismissed with leave to amend to address the specific deficiencies identified in this order, but not to add new claims or theories. Defendant's Motion to Expunge is denied.

IT IS SO ORDERED.

Dated: October 1, 2012

DONNA M. RYU
United States Magistrate Judge